

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00216-CR

Robert Lyonell **PHILLIPS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CR-7945
Honorable Raymond Angelini, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  March 13, 2013

AFFIRMED AS MODIFIED

Robert L. Phillips appeals his convictions for coercion of a public servant and terroristic threat arising out of statements he made during a series of phone calls to the 911 emergency line of the San Antonio Police Department.  In two issues, Phillips challenges the legal sufficiency of the evidence to support his convictions.  We affirm, but modify the trial court's judgment to correct a clerical error.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts are undisputed. On the evening of February 23, 2011, Phillips made a series of phone calls between 8:00 p.m. and 11:00 p.m. to the San Antonio Police Department (SAPD) 911 emergency line. He repeatedly demanded that a police officer be immediately dispatched to his home to make a report documenting the fact that he did not receive visitation with his daughter that night between 6:00 and 8:00 p.m. Even though Phillips was instructed that it was a non-emergency civil matter, he continued calling the 911 line. Phillips told more than one 911 operator not to send a particular police officer, Officer Steve Christian, to his house and stated he would "blow his brains out" if he showed up. The 911 operators each varied from their normal procedure and sent a message to the dispatcher warning of Phillips' threat against Officer Christian and recommending that he not be sent to that location. A different police officer was dispatched and made contact with Phillips at his home. The officer found Phillips to be upset but calm, and advised him to contact the court because the matter was a civil issue.

Phillips was indicted for three offenses arising out of his statements to the 911 operators that night: Coercion of a Public Servant (Count I); Terroristic Threats (Count II); and Retaliation (Count III). Phillips pled not guilty and proceeded to a jury trial on Counts I and II. The State waived Count III.

The trial evidence consisted of the testimony of the three 911 operators who took Phillips' calls, the recordings of the calls and the testimony of the SAPD custodian of records who authenticated the recordings, the testimony of the officer who was dispatched to Phillips' house who identified Phillips' voice on the recordings, and the testimony of a detective that Christian was a police officer and that, to his knowledge, Phillips was not a member of a governmental body. Officer Christian, against whom the threat was directed, did not testify. The trial testimony is briefly summarized below.

Amanda Hernandez was an SAPD 911 operator on the night in question and received two calls around 9:33 p.m. An audio recording of the two calls (Call Nos. 4 and 5) was admitted into evidence as State's Exhibit No. 1 and played for the jury. During Call No. 4, after Hernandez informs Phillips that it is likely that Officer Christian will be sent out, Phillips states, "… he cannot come out here because if he comes out here and I see him, I'm going off on him ... Now, I'm not playing with y'all any more. This is not a joke. This is not a game. If you send S. Christian out here, there's gonna be a problem." Phillips later calls back (Call No. 5) wanting to know why an officer has not arrived. When Hernandez asks what he is reporting, Phillips answers, "A visitation violation report and the fact that they sent out S. Christian, his Badge No. is 279, and they know that this police officer is not to come out to my house, but they continue to send this police officer out to my house knowing that me and this police officer has had an alternacation [sic] but yet they still want to send this police officer out and, I'm sorry, but that is not acceptable." Hernandez testified she has no control over which officer gets dispatched on a particular call. However, she did send a message to the dispatcher stating, "Do not send Officer Christianson [sic];" she would not normally do that in the course of her duties as an operator.

Kristene De Los Santos was another 911 operator working that night who received a call from Phillips. The recording of the call, denoted as Call No. 7, was admitted into evidence as State's Exhibit No. 2a. The caller gives his name as "Robert Phillips." After expressing his frustration in colorful language about the difficulty he is having in making a report, Phillips demands that an officer be sent to his home within ten minutes or he will continue calling. De Los Santos tells Phillips to call the non-emergency number because it is a civil matter, which upsets Phillips. He replies, "this is what I gotta do to get y'all's attention," and states he will continue calling the 911 line until an officer arrives. De Los Santos testified that she sends the information from the emergency and non-emergency calls to the dispatch center and that it is up

to the dispatcher to send out an officer according to the priority of the call. In demanding that she send an officer out within ten minutes, Phillips was demanding something she could not do. De Los Santos did, however, send a note to the dispatcher that Phillips wanted an officer to respond right away or he would continue to call every ten minutes.

Yvonne Jaramillo is the 911 operator named as the complainant in Count I of the indictment charging Phillips with coercion of a public servant. She testified that she works for the SAPD Communications Unit. On February 23, 2011, she received a call (Call No. 8) from a person who identified himself as "Robert Phillips" and stated he was a nursing assistant. Jaramillo stated that Phillips was rude and abusive. The recording of the call was admitted into evidence as State's Exhibit No. 3; Jaramillo identified the recording as the call she received from Phillips. Jaramillo testified that Phillips was requesting that an officer be sent to his home to make a report, but he did not want "Officer S. Christian" sent out or he would "blow his head off." Specifically, Phillips states on the recording, "As long as it's not S. Christian, Badge No. 279, because if he comes out, you know what . . . since we're being recorded I'm gonna put this, if he comes out I'm gonna blow his mother-f***ing brains out. And that's where it stands." He repeats the same statement a second time and adds, "I'm not playing with y'all any more. This sh*t is serious and I'm not playing. I'm serious. So you be stupid if you want to. And you send this stupid-*ss police officer out he's gonna get his head blown off." Jaramillo testified that as a 911 operator she has no control over which officer is sent out on a call, but she knew it was likely the same officer would be assigned. The dispatcher assigns an officer within the district to a particular call depending on the availability of the officers. Jaramillo was so concerned that she sent a message to the dispatcher warning not to send Officer Christian because Phillips "was going to blow his brains off [sic]." Jaramillo stated she was scared and worried because Phillips

"was threatening the officer's life." She testified that with his threat, Phillips was trying to get her to do her job differently than she normally would.

Joel Nelson, custodian of records for the SAPD Communications Unit, testified that he maintains the database for all incoming emergency and non-emergency calls. Nelson explained that the calls are automatically recorded to a database and the operators type in the information from the call in a different database and then send that message to the dispatcher, who prioritizes the calls by area and sends out an officer. Nelson authenticated State Exhibit Nos. 1-3 as the copies he made of the 911 calls from Phillips on February 23, 2011.

Officer Thomas Sowell testified he arrived at Phillips' house at approximately 11:00 p.m. on February 23, 2011. Phillips was upset that an officer had not arrived sooner, stating that he had made several calls to 911 because he did not receive visitation with his daughter that night and wanted to document it. Officer Sowell made a report but told Phillips it was a civil matter and advised him to contact the court. Phillips showed Sowell about 100 case numbers of previous reports he had made about visitation violations. Phillips was calm and did not make any threats against Sowell. Upon returning to his patrol car, Sowell saw the keycard message about Phillips' threat against Officer Christian; he then left a message for Christian giving him a "heads up" about Phillips. Officer Sowell identified Phillips' voice on the three 911 recordings admitted as State Exhibit Nos. 1, 2 and 3.

Finally, Mark Clancy, the SAPD detective who investigated the case, testified that Steve Christian is an SAPD police officer with Badge No. 279 who is assigned to east patrol which covers the district where Phillips lives.

The jury found Phillips guilty on Counts I and II. Phillips was sentenced to five years' imprisonment on each count concurrently, but the trial court suspended the sentence and placed Phillips on community supervision for five years. Phillips now appeals.

**LEGAL SUFFICIENCY OF THE EVIDENCE**

### *Standard of Review*

In reviewing the legal sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The essential elements of the crime are the elements of the offense as defined by a hypothetically correct jury charge, which is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) *cert. denied*, 133 S.Ct. 536 (2012) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The law "as authorized by the indictment" consists of the statutory elements of the offense as modified by the charging instrument. *Johnson*, 364 s.W.3d at 294; *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. The jury may make reasonable inferences from the evidence presented. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (jury may draw reasonable inferences from the basic facts to the ultimate facts). This legal sufficiency standard applies equally to both direct and circumstantial evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

### *Coercion of Public Servant (Count I)*

Section 36.03 of the Penal Code defines the offense of coercion of a public servant in relevant part as:

    (a)  A person commits an offense if by means of coercion he:

        (1)  influences or attempts to influence a public servant in . . . a specific performance of his official duty . . . .

    (b)  An offense under this section is a Class A misdemeanor unless the coercion is a threat to commit a felony, in which event it is a felony of the third degree.

TEX. PENAL CODE ANN. § 36.03(a)(1), (b) (West 2011).  Section 1.07 of the Penal Code defines "coercion" to mean "a threat, however communicated: (A) to commit an offense; (B) to inflict bodily injury in the future on the person threatened or another . . . ."  TEX. PENAL CODE ANN. § 1.07(a)(9) (West Supp. 2012).

Here, the indictment alleged that Phillips did "intentionally or knowingly ATTEMPT TO INFLUENCE A PUBLIC SERVANT, NAMELY: Yvonne Jaramillo . . . IN THE SPECIFIC PERFORMANCE OF HER OFFICIAL DUTY, by means of coercion BY THREATENING TO COMMIT A FELONY, TO WIT: ASSAULT ON A PUBLIC SERVANT, and defendant was not then a member of the governing body of a governmental entity and was not taking official action as a member of such a governing body."[1]  Thus, Phillips was charged with felony coercion of a public servant by attempting to influence Jaramillo in the performance of her duties as a 911 operator by threatening to commit the felony offense of assault on a public servant.

The jury charge tracked the language of the indictment and instructed the jury that the charged offense is a felony if the coercion is a "threat to commit a felony" and that "assault on a public servant is a felony."  The charge then defined the offense of assault on a public servant as intentionally or knowingly causing bodily injury to a person the actor knows is a public servant

---

[1] Subsection (c) of section 36.03 provides that it is an "exception to the application of Subsection (a)(1)," i.e., to the offense of coercion of a public servant, when the person attempting to influence the public servant is himself a member of the governing body of a governmental entity and is engaged in an official action.  TEX. PENAL CODE ANN. § 36.03(c) (West 2011).  The indictment alleged the negation of the exception, and Detective Clancy testified that, to the best of his knowledge, Phillips was not a member of a governing body of a governmental entity at the time he made the 911 calls.  This element is not relevant to Phillips' issues on appeal.  *See Tobias v. State*, 884 S.W.2d 571, 578 (Tex. App.—Fort Worth 1994, pet. ref'd) (holding that negation of exception is defined to be an element of the offense).

while the public servant is discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West 2011).

Therefore, as defined by the statute, indictment, and charge, the essential elements the State was required to prove are that Phillips: (1) attempted to influence Jaramillo, a public servant, (2) in the specific performance of her official duty (3) by means of coercion, which consisted of threatening to commit a felony, (4) which threatened felony was assault on a public servant.

On appeal, Phillips raises two issues that he phrases as a variance: (1) whether Yvonne Jaramillo was the correct complainant since the scope of her duty did not include dispatching a particular officer; and (2) whether the threatened felony offense, i.e., the assault, must be against the public servant being coerced (Jaramillo) or can be against a third person (Christian). Phillips argues that a fatal variance between the pleadings in the indictment and the proof at trial exists on both issues which renders the evidence legally insufficient to support his conviction.

There are two types of variance between pleading and proof—statutory and non-statutory. *Johnson*, 364 S.W.3d at 294. The first occurs when the statutory language specifies alternate methods by which the offense may be committed and the indictment pleads one method but the State proves an unpled method. *Id.* The failure to prove the statutory language pled in the charging instrument is always a material variance and renders the evidence legally insufficient to support the conviction. *Id.* at 294–95, 298; *Cada v. State*, 334 S.W.3d 766, 768 (Tex. Crim. App. 2011) (variance between the pleading of one statutory element and proof of a different statutory element is a material variance). The second type of variance involves a non-statutory allegation that is descriptive of the offense, such as when the indictment charges "Mary" was the victim but the evidence at trial proves the victim was "John." *Johnson*, 364

S.W.3d at 294. In determining whether such a non-statutory variance is material or immaterial, the appellate court focuses on whether the proof at trial shows "an entirely different offense" than what was alleged in the charging instrument. *Id.* at 295.

Phillips states that his complaint with respect to both issues is based on the first type of variance—a statutory variance in which the indictment pled one statutory method of committing the offense but the State proved a different statutory method. The section 36.03 offense, as pled, was that Phillips attempted to influence a public servant, Jaramillo, in the performance of her official duty by coercion, specifically by threatening to commit a felony (assault against a public servant). As discussed below, the evidence matched what was pled in the indictment; therefore, there is no variance and no legal insufficiency.

### (1) Jaramillo as Complainant: Public Servant to be Influenced

With respect to his argument that Jaramillo was the wrong complainant, Phillips argues the variance arises because the State pled that Jaramillo was the public servant who he sought to influence, but the evidence showed she had no authority to dispatch a particular officer—her duty was to answer the 911 emergency calls and pass the information along to the dispatcher who then determined which officer to dispatch. However, the evidence also showed that Jaramillo departed from her usual procedure in fulfilling her official duty by sending a message to the dispatcher warning of the threat against Officer Christian and by making a recommendation concerning the dispatch of a particular officer, i.e., not to dispatch Christian. The testimony of Jaramillo and the other 911 operators showed this course of action was outside the scope of her official duty as a 911 operator and was not within the normal performance of her duty. Section 36.03 says nothing about the authority of the public servant to be influenced, only requiring that the defendant influence or attempt to influence the public servant in "a specific performance of his official duty." TEX. PENAL CODE ANN. § 36.03(a)(1). At oral argument,

counsel for Phillips conceded that the evidence showed Jaramillo's performance of her duty was indeed influenced by Phillips' threat because she sent a message to the dispatcher warning against sending Officer Christian. The evidence that Jaramillo's actions were in fact influenced constitutes some evidence of Phillips' intent to influence Jaramillo. Along with the evidence showing Phillips repeatedly called the 911 emergency line even after being informed his complaint was a non-emergency civil matter, repeatedly demanded that the 911 operators immediately send out an officer, repeatedly told them not to send Officer Christian, and stated he would "blow his brains out," the record supports a reasonable inference that Phillips was attempting to, and intended to, influence the person who answered the 911 calls, which was the operator. Therefore, there is legally sufficient evidence that Phillips attempted to influence the way in which Jaramillo, a public servant, performed her official duty as stated in the statute, pled in the indictment, and charged to the jury.

### (2) Coercion: Threat to Commit a Felony against a Third Person (Officer Christian)

Phillips' next argument is that the threatened felony offense used as coercion must be directed at the public servant being coerced. Phillips concedes the evidence shows he made a threat against Officer Christian when he spoke to Jaramillo. Given that the indictment pled that he attempted to influence Jaramillo by threatening to commit a felony, "to wit: assault on a public servant," Phillips asserts the evidence had to prove that the threatened felony was directed at Jaramillo—"the only public servant named within the indictment." Because there is no evidence that he threatened to assault Jaramillo, he argues there is a fatal variance which renders the evidence legally insufficient. Phillips relies on *Cada*, a case in which the defendant was charged with threatening to retaliate against a "witness." The retaliation statute provided alternative means of committing the offense based on the status of the protected person, and the court held the categories of protected persons are distinct statutory elements of the offense which

must be pled. *Cada*, 334 S.W.3d at 776. Because the trial evidence showed the person against whom Cada threatened to retaliate was actually an informant, not a witness, the court held there was a fatal variance between the pleading and the proof which rendered the evidence legally insufficient to support the conviction. *Id.* at 774–75. Phillips argues the same type of statutory variance exists here.

Phillips' argument is premised on the idea that the threatened felony must be directed at the public servant sought to be influenced. He asserts that is the "lesson" from *Tobias v. State,* 884 S.W.2d 571 (Tex. App.—Fort Worth 1994, pet. ref'd), one of the few cases addressing coercion of a public servant under section 36.03. While *Tobias* involved threats of violence made to and directed at the appellate justices who were hearing the defendant's appeal, the opinion does not address the issue of whether a threatened felony against a third person may be used as coercion against a public servant. *See id.* at 580–84 (rejecting defendant's arguments, among others, that statute was unconstitutional). Thus, *Tobias* is not controlling on the issue before us.

Based on the structure of the statute, it appears that Phillips is conflating the coercion and one of several means of coercion—the "threat to commit a felony." The structure of section 36.03's statutory language shows the proscribed conduct is "influencing or attempting to influence" and the means of influence is "by coercion;" subsections (a)(1) and (a)(2) provide two alternate methods of committing the offense by influencing or attempting to influence either a public servant or a voter. TEX. PENAL CODE ANN. § 36.06(a)(1), (2). Subsection (b) then elevates the degree of offense to a third degree felony if the "coercion" is "a threat to commit a felony." *Id.* § 36.06(b). It does not define the felony, or state that the felony must be against the public servant sought to be influenced. In addition, the Penal Code's definition of "coercion" states that "coercion" is a threat, and lists six different types of threats. TEX. PENAL CODE ANN.

§ 1.07(a)(9); *see Tobias*, 884 S.W.2d at 586 (holding that section 1.07's definition of "coercion" applies to a section 36.03 offense). One of those types of threats is a general one, "to commit an offense;" another is "to inflict bodily injury in the future on the person threatened or another." *Id.* § 1.07(a)(9)(A), (B). Reading section 1.07's definition of coercion together with section 36.03's definition thus makes it clear that the threatened felony used as coercion may be directed at "another." The fact that the threatened third person in this case happened to be another public servant does not matter.

The State produced sufficient evidence to prove the offense of coercion of a public servant as pled in the indictment. The evidence showed that Phillips made a threat to commit a felony against Officer Christian, i.e., to "blow his brains out," that Officer Christian was a public servant as alleged in the indictment, and that such threatened felony was used as a means of coercion to influence Jaramillo in the performance of her official duty.

***Conclusion*** Phillips' first issue is overruled because there is no variance between the pleading and the proof, and there is legally sufficient evidence to establish all the elements of coercion of a public servant under section 36.03 as pled in the indictment and charged to the jury.

### *Terroristic Threat (Count II)*

In relevant part Penal Code section 22.07 provides that a person commits the offense of terroristic threat if he:

> (a) threatens to commit any offense involving violence to any person . . . with intent to:
> . . .
>> (6) influence the conduct or activities of a branch or agency of the . . . state, or a political subdivision of the state.

TEX. PENAL CODE ANN. § 22.07(a)(6) (West 2011). Subsection (e) states that an offense under subsection (a)(6) is a third degree felony. *Id.* § 22.07(e) (West 2011).

The indictment alleged that Phillips did "threaten to commit an offense involving violence to A PERSON, NAMELY: Steve Christian, to wit: THREATENING TO BLOW HIS BRAINS OUT, with intent to influence the conduct or activities of a branch or agency of the state or a political subdivision of the state, to wit: THE SAN ANTONIO POLICE DEPARTMENT, COMMUNICATIONS UNIT." The jury charge tracked the language of the indictment.

Phillips argues the evidence is legally insufficient to support his conviction for terroristic threat because: (1) there is no evidence the threat influenced the conduct of the SAPD Communications Unit; and (2) there is no evidence the threat was a threat of imminent violence; in fact, the evidence showed the threat to commit a violent offense was a conditional threat. Phillips also asserts there is a fatal variance between the pleading and proof because the evidence showed his threat to blow Officer Christian's brains out was conditioned on Christian being sent out to his house, but the indictment and jury charge did not state the threat as conditional.

### (1) Intent to Influence SAPD Communications Unit

Phillips argues the evidence is insufficient to prove his threat influenced the activities of the SAPD Communications Unit because there is no evidence that Officer Christian was on duty and could have been dispatched, and the evidence showed that Sowell was the officer dispatched to Phillips' house. He points out that no dispatcher testified, and that the 911 operators conceded they had no authority to control what officer was dispatched on a call. The language of section 22.07(a)(6) only requires, however, that the defendant make a threat with the intent to influence the activities of the governmental body, not that the threat actually had an influence. TEX. PENAL CODE ANN. § 22.07(a)(6). The requisite specific intent to make a terroristic threat may be inferred from a defendant's acts, words, and conduct. *Cook v. State*, 940 S.W.2d 344, 347 (Tex. App.—Amarillo 1997, pet. ref'd) (citing *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App.

1980)). As discussed under Count I, *supra*, the evidence showing that Phillips repeatedly called the 911 line demanding an officer be dispatched, made the threat to commit a violent crime to the 911 operators if a particular officer was dispatched, and the 911 operators varied from their usual procedure by sending messages warning the dispatcher of the threat supports a finding that Phillips' intent in making the threat was to influence the conduct and activities of the SAPD Communications Unit.

### (2) *Conditional Threat to Commit Violent Offense / Imminence*

Phillips argues the evidence is insufficient because his threat to assault Officer Christian was conditioned on the occurrence of a future event—Christian being sent out to Phillips' house. In other words, Phillips would carry out his threat only if Christian arrived at his house. Phillips contends the threat "to commit any offense involving violence" proscribed by section 22.07(a) must be immediate in the sense that the commission of the violent offense must be imminent.

Phillips was charged under section 22.07(a)(6). TEX. PENAL CODE ANN. § 22.07(a)(6). The cases relied on by Phillips predate the addition of subsection (a)(6) and fall under a different subsection, (a)(2), which expressly requires that by making a threat of violence the defendant intended to "place any person in fear of imminent serious bodily injury." *Id.* § 22.07(a)(2) (West 2011); *see Bryant v. State*, 905 S.W.2d 457, 459-60 (Tex. App.—Waco 1995, pet. ref'd) (conditional threat to assault county commissioner if he did not grade road in front of defendant's house was insufficient to prove defendant's specific intent to place commissioner in fear of imminent serious bodily injury under section 22.07(a)(2)); *Parnell v. State*, No. 12-09-00387-CR, 2010 WL 2638064, at *4 (Tex. App.—Tyler June 30, 2010, no pet.) (mem. op.) (not designated for publication) (verbal phone threat made to deputy of future assault if deputy would "come meet" defendant was insufficient to show specific intent to place deputy in fear of imminent serious bodily injury under section 22.07(a)(2)).

Here, Phillips was charged and convicted under subsection (a)(6), which requires that he made the threat to commit a violent offense with the specific intent to "influence the conduct or activities of a branch or agency of . . . the state, or a political subdivision of the state." TEX. PENAL CODE ANN. § 22.07(a)(6). In contrast to subsection (a)(2), the statutory language of (a)(6) does not include any requirement of, or reference to, imminence. Subsection (a)(6) was added in 2003, and there are no cases involving section 22.07(a)(6). Therefore, this is a question of statutory interpretation which this court reviews de novo. *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009). In construing subsection (a)(6), we apply the well-established principles of statutory construction to determine whether there is a requirement of imminence to the threat to commit a violent offense when it is made with intent to influence a governmental body under section 22.07(a)(6). *See id.*; TEX. GOV'T CODE ANN. § 311.011(a) (West 2005). Our analysis begins with the plain statutory language read in the context of the statute as a whole. *Tapps*, 294 S.W.3d at 177. "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Id.*

Looking at the plain text of section (a), it states that a person commits an offense if he makes a threat to "commit any offense involving violence to any person or property." TEX. PENAL CODE ANN. § 22.07(a). The Legislature could have required that the commission of the violent offense be "imminent," but it did not. Within section (a), there are six subsections that define the different types of specific intent underlying the person's threat to commit a violent offense. *Id.* § 22.07(a)(1)-(6) (West 2011). The only subsection that includes the word "imminent," or any reference to the imminence of an action or reaction, is subsection (a)(2). *Id.* § 22.07(a)(2) (intent to place a person in fear of "imminent serious bodily injury"). Thus, the plain unambiguous language of section (a), as well as subsection (a)(6), does not contain a

requirement of imminence, and we may not read such a requirement into the statute. *See Tapps*, 294 S.W.3d at 177.

The vast majority of the reported cases under section 22.07 deal with threats intended to place a person "in fear of imminent serious bodily injury" under subsection (a)(2). Therefore, most cases that analyze the sufficiency of the evidence to support a terroristic threat conviction discuss the requirement that the person making the threat had to intend to place the victim in fear of imminent bodily harm. They are instructive to the extent that they discuss the interplay between imminence and the defendant's intent in making a threat to commit a violent offense in order to cause a particular reaction. For example, the cases have held that conditioning a threat of harm on a future occurrence or nonoccurrence does not necessarily mean the harmful consequences threatened are not imminent for purposes of section 22.07(a)(2). *See In re A.C.*, 48 S.W.3d 899, 904 (Tex. App.—Fort Worth 2001, pet. denied); *see also Cook*, 940 S.W.2d at 347–48 (rejecting defendant's argument that his telephone messages threatening to severely beat victim were "conditional threats" of future harm and thus could not support a finding that he intended to place victim in fear of "imminent" serious bodily injury). The offense of terroristic threat is completed under subsection (a)(2) once the defendant makes a threat to commit a violent offense seeking the desired reaction of placing the victim in fear of imminent serious bodily injury. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982); *In re A.C.*, 48 S.W.3d at 904. The focus of the intent inquiry is on the intended reaction. *In re A.C.*, 48 S.W.3d at 904; *Williams v. State*, 194 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2006), *aff'd* 252 S.W.3d 353 (Tex. Crim. App. 2008) (conditional threats to beat teacher during upcoming conference were sufficient to support conviction for terroristic threat under section 22.07(a)(2)). It is not necessary that the victim actually be in fear of imminent serious bodily injury or that the defendant have the capability or intention to actually carry out the threat of violence. *Dues*, 634

S.W.2d at 305; *Williams*, 194 S.W.3d at 574–75. Further, the State is not required to prove an admission by the defendant as to his own specific intent before he can be convicted of a terroristic threat; it may be inferred from the defendant's acts, words, or conduct. *Zorn v. State*, 222 S.W.3d 1, 3 (Tex. App.—Tyler 2002, pet. dism'd). "The desired and sought after reaction of the listener, regardless of whether the threat is carried out, constitutes some evidence of the intent of the protagonist." *Id.*

Based on the plain language of section 22.07(a) and subsection (a)(6), and the law interpreting and applying subsection (a)(2) of the statute, we conclude there is no requirement of imminence to the commission of the violent offense used as a threat with intent to obtain the desired reaction specified in (a)(6). This also resolves Phillips' argument of a fatal variance; the evidence showed he made a threat to commit a violent offense against Officer Christian, which is what was pled and charged.

*Conclusion*    Accordingly, we overrule Phillips' second issue challenging his conviction for terroristic threat because there is legally sufficient evidence to support a finding on each element of terroristic threat under section 22.07(a)(6), and there is no variance between pleading and proof.

### CONCLUSION

Based on the foregoing reasons, we hold the evidence is legally sufficient to support Phillips' convictions. We affirm the trial court's judgment for Count I. Because the judgment for Count II mistakenly recites that Phillips was convicted under "section 22.07(4)" of the Penal Code, we correct the clerical error and modify the judgment for Count II to state that Phillips was

convicted under "section 22.07(a)(6)" of the Penal Code and affirm the judgment for Count II as modified. *See* TEX. R. APP. P. 43.2(b).

Rebeca C. Martinez, Justice

PUBLISH