

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00093-CR

_____

BRANDON LARAY GALLOWAY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2
Hunt County, Texas
Trial Court No. CR1201889

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Brandon Laray Galloway was charged by information with the offense of terroristic threat. *See* TEX. PENAL CODE ANN. § 22.07(a)(2) (West 2011). The jury found Galloway guilty and assessed punishment at 280 days' confinement in the Hunt County Jail and assessed a fine of $3,000.00. On appeal, Galloway challenges the legal sufficiency of the evidence to support his conviction. We affirm the judgment of the trial court.

## I.    Background

In May 2012, nineteen-year-old LaQuintin Heard shared an apartment with his mother, Tahisa Heard. Galloway, Tahisa's boyfriend, frequented the Heard home. On the morning of May 27, a dispute erupted between Tahisa and Galloway when Tahisa asked Galloway to stop drinking. When Galloway refused, Tahisa grabbed the bottle from which Galloway had been drinking and began pouring it out. Galloway became angry and tore Tahisa's diploma in half. At that point, Tahisa called the police.

Hearing the commotion, LaQuintin came in the room and stood behind his mother, telling Galloway not to hit Tahisa. When Galloway and LaQuintin exchanged heated words, Tahisa stepped between them to avoid a physical confrontation. At that point, Galloway struck Tahisa in the chest.[1] Galloway said he was going to "do something" to LaQuintin, and Tahisa believed Galloway was going to "get at" her son. Tahisa also testified that LaQuintin picked up a bat after Galloway hit her but did not strike Galloway with the bat.

---

[1]Tahisa signed an affidavit of nonprosecution in June 2012, approximately one week after the incident. The affidavit indicated that Galloway did not physically touch her on the date in question. She testified that she signed the affidavit without having read it. Tahisa did not write the affidavit.

2

LaQuintin testified that on the morning of May 27, 2012, Galloway and his daughter were at the apartment LaQuintin shared with his mother. Galloway was very drunk that morning when Tahisa and Galloway began arguing. A few minutes after the argument began, LaQuintin heard Galloway saying "[H]e -- like he would, like, kill us. . . . I thought he was going to, you know, do something. And I thought he was going to hurt us, so I had my bat to protect us."[2] LaQuintin told Galloway to get out of the house "before I end up hitting you." LaQuintin then stood between Galloway and Tahisa, at which point Galloway said, "I'll kill you and your son."

At some point during the dispute, Tahisa called the police, who arrived minutes later. Officer Larry Henderson was the first to arrive on the scene. As he approached Tahisa's apartment, Henderson heard yelling and screaming. The scene was chaotic when Henderson entered the apartment—LaQuintin was holding a bat, and everybody was screaming. Henderson ordered LaQuintin to drop the bat and then separated Tahisa and Galloway.

Henderson described Tahisa and LaQuintin as "scared and upset." Tahisa, holding her chest and shaking, informed Henderson that Galloway struck her in the chest with a closed fist. LaQuintin told Henderson that Galloway threatened to kill him. Galloway was arrested at the scene. When arrested, Galloway became hostile and began yelling and making threats.

## II.    Standard of Review

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of terroristic threat beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912

---

[2]LaQuintin explained that he kept the bat in the closet downstairs.

(Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while keeping in mind that the credibility of witnesses is the sole province of the jury and that we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19); *Ehrhardt v. State*, 334 S.W.3d 849, 857 (Tex. App.— Texarkana 2011, pet. ref'd).

## III. Analysis

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

A person commits the offense of terroristic threat if "he threatens to commit any offense involving violence to any person or property with the intent to . . . (2) place any person in fear of imminent serious bodily injury." TEX. PENAL CODE ANN. § 22.07(a)(2); *Barnett v. State*, 344 S.W.3d 6, 15 (Tex. App.—Texarkana 2011, pet. ref'd). Here, the information charged that Galloway threatened "to commit an offense involving violence to a person, namely, threat, with

4

intent to place Laquintin Heardin [sic] fear of imminent serious bodily injury, and said conduct of the defendant constituted family violence."[3]

Once the defendant makes a threat to commit a violent offense seeking the desired reaction of placing the victim in fear of imminent serious bodily injury, the offense of terroristic threat is completed. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. [Panel Op.] 1982); *Walker v. State*, 327 S.W.3d 790, 794 (Tex. App.—Fort Worth 2010, no pet.). The commission of this offense does not require that the victim actually be in fear of imminent serious bodily injury or that the defendant have the capability or intention to actually carry out the threat of violence. *Dues*, 634 S.W.2d at 305; *Phillips v. State*, 401 S.W.3d 282, 293 (Tex. App.—San Antonio 2013, pet. ref'd). The requisite intent can be inferred from the acts, words, and conduct of the accused. *Phillips*, 401 S.W.3d at 293.

Galloway contends the evidence here is unclear and conflicting. On the contrary, LaQuintin's testimony is quite clear. He testified that as he was trying to step between his mother and Galloway, Galloway threatened to kill him as well as Tahisa. Officer Henderson testified that when interviewing LaQuintin shortly after the confrontation, LaQuintin told him that Galloway threatened to kill him. When Henderson arrived on the scene, Tahisa and LaQuintin were "scared and upset." Galloway was agitated and became hostile and threatening when he was arrested.

---

[3]A terroristic threat involving family violence is a Class A misdemeanor, whereas an offense under Section 22.07(a)(2) is a Class B misdemeanor. TEX. PENAL CODE ANN. § 22.07(c)(1) (West 2011).

5

Galloway further contends that there is no evidence that he intended to place LaQuintin in fear of imminent serious bodily injury. In gauging imminence, we must look to the proximity of the threatened harm to the condition. *See Williams v. State*, 194 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 353 (Tex. Crim. App. 2008). "Imminent" means "'[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.'" *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (quoting BLACK'S LAW DICTIONARY 676 (rev. 5th ed. 1979)); *Cook v. State*, 940 S.W.2d 344, 347 (Tex. App.—Amarillo 1997, pet. ref'd). Here, the threat of harm was not conditioned on the occurrence of any future event[4] and was not phrased in terms of "might" or "may." Galloway, standing just inches from LaQuintin in the midst of a heated argument, told LaQuintin that he would kill him, a statement threatening imminent serious bodily injury.

Since intent can be inferred from words, acts, and conduct, a rational jury could reasonably find—based on the threat to kill, Galloway's hostile and threatening attitude, and the fact that LaQuintin was scared and upset when officers arrived—that Galloway intended to put LaQuintin in fear of imminent serious bodily injury. Viewing all the evidence in the light most favorable to the prosecution, we hold that a rational fact-finder could have found the essential elements of the offense of terroristic threat beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. The evidence is legally sufficient to support the conviction.

---

[4]Even a threat of harm conditioned on the occurrence or nonoccurrence of a future event does not necessarily mean the threat is not imminent. *Cook*, 940 S.W.2d at 348.

## IV.    Conclusion

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:    November 26, 2013
Date Decided:      December 11, 2013

Do Not Publish