**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00522-CR**
_____

**DAVID RANDALL DRAKE JR. A/K/A DAVID DRAKE A/K/A
DAVID DRAKE JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. 10-09227**

**MEMORANDUM OPINION**

This is an appeal from the trial court's judgment revoking David Randall Drake Jr.'s[1] community supervision. In a single issue, Drake challenges the legal sufficiency of the evidence supporting the trial court's determination that he violated the conditions that governed his placement on community supervision. We affirm the trial court's judgment.

---

[1]Drake is also known as David Drake and as David Drake Jr.

In carrying out a plea bargain agreement, Drake pled guilty to aggravated assault. *See* Tex. Penal Code Ann. § 22.02 (West 2011). The trial court found the evidence sufficient to find Drake guilty, then deferred further proceedings, placed Drake on community supervision for five years, and assessed a fine of $1,000.

Subsequently, the State filed a motion to revoke Drake's placement on unadjudicated community supervision. Drake pled "not true" to the State's allegations that he had violated the terms governing his community supervision. After conducting an evidentiary hearing, the trial court found that Drake had violated two of the conditions described in the community supervision order, found Drake guilty of committing aggravated assault, and assessed Drake's punishment at ninety-nine years in prison.

Drake argues the evidence is legally insufficient to support the trial court's determination that he violated the conditions of the community supervision order. In its motion to revoke, the State alleged that on or about October 4, 2012, Drake violated the community supervision order by threatening to beat and dismember S.S., his mother, a terroristic threat under the Penal Code. *See id.* § 22.07 (West 2011) (explaining that a person commits the offense of making a terroristic threat "if he threatens to commit any offense involving violence to any person . . . with intent to[] place any person in fear of imminent serious bodily injury"). The motion

also alleged that on or about October 4, 2012, Drake consumed whiskey, violating another condition of the trial court's community supervision order, which required that he abstain from the use of intoxicating substances.

Drake's mother, S.S., testified at the hearing on the motion to revoke. According to S.S., before Drake threatened her, Drake went to the liquor store and then returned with a bottle of whiskey. S.S. testified that she saw Drake drink from the bottle. Also, according to S.S., she argued with Drake about his drinking; at that point, Drake said that "he was going to take a hammer and beat my head and face in to where I couldn't be recognized and that he was going to dismember me and spread my body parts all over where I never be found." When asked whether she feared that Drake might "try to make good on[]" his threat, S.S. responded: "Well, he - - that's the second time that I'm - - I'm afraid that a third time that he may." There was also evidence when Drake made the threat at issue, he was serving community supervision based on his guilty plea to an indictment alleging that he had previously assaulted his mother with a deadly weapon. S.S. also explained that after Drake made the threat that is now at issue, Drake broke her phone as she attempted to call the police. After that, she picked up her coffee pot, hit him on the head with it, ran outside the house, and then called the police.

3

During the revocation hearing, Drake gave the trial court a different account than his mother gave of the incident. According to Drake, he hid S.S.'s medicine from her because she had taken too many pills. When S.S. argued with him about hiding her medicine, she threw a cup of coffee on him; he retaliated by throwing his cup of coffee at her. At that point, Drake explained that S.S. grabbed the coffee pot, hit him in the face with it, and she then ran outside and called the police. Drake denied that he was drinking and denied knowing anything about a bottle of whiskey. He also denied that he ever threatened S.S.

Drake argues that S.S.'s response about whether she feared Drake when he threatened her shows that she was not placed in imminent fear of him. According to Drake, S.S.'s response about whether she was in fear indicates that S.S. understood his threat to mean that he might harm her in the future; he concludes that S.S. did not believe that his threat was imminent.

At a revocation hearing, the State has the burden to establish the alleged violations by a preponderance of the evidence. *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006); *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The trial court is the sole trier of facts and judge of the credibility of the witnesses, and the trial court decides what weight to give to the testimony. *Cochran v. State*, 78 S.W.3d 20, 28 (Tex. App.—Tyler 2002, no pet.). We review a

trial court's decision to revoke community supervision for an abuse of discretion. *Rickels*, 202 S.W.3d at 763. The trial court abuses its discretion only if its decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Wilkins v. State*, 279 S.W.3d 701, 704 (Tex. App.—Amarillo 2007, no pet.). We view the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). Proof of a single violation of the terms of a defendant's placement on community supervision is sufficient to support revocation. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980).

A threat of harm that is conditioned on a future occurrence does not necessarily mean that the threatened consequences are not sufficiently imminent to fulfill the requirements of Penal Code section 22.07(a)(2). Tex. Penal Code Ann. § 22.07(a)(2) (providing that a person commits an offense if he threatens to commit any offense involving violence to any person with intent to place any person in fear of imminent serious bodily injury); *see Phillips v. State*, 401 S.W.3d 282, 292 (Tex. App.—San Antonio 2013, pet. ref'd); *In re A.C.*, 48 S.W.3d 899, 904 (Tex. App.—Fort Worth 2001, pet. denied). "The focus of the intent inquiry is on the intended reaction." *Phillips*, 401 S.W.3d at 292. In other words, it is the

5

defendant's intent, not the victim's reaction that matters. The defendant's intent may be inferred from his acts, words, or conduct. *Id*. at 293.

The circumstances S.S. described and that the trial court reasonably found credible allowed the trial court to infer that Drake made the threat at issue to place S.S. in fear of imminent serious bodily injury so that she would not continue to interfere with his drinking. Based on S.S.'s testimony that Drake went to the liquor store, returned with a bottle of whiskey, and drank from the bottle, the trial court could also infer that Drake was drinking whiskey. Although Drake gave a different account of the events, the trial court, as the trier of the facts and the judge of the credibility of the witnesses, was entitled to accept S.S.'s account of the events; it could reasonably reject Drake's account of them. We conclude that the evidence was sufficient to support the trial court's finding that on October 4, 2012, Drake violated two conditions of his community supervision by making a terroristic threat against S.S. and by consuming alcohol. *See Rickels*, 202 S.W.3d at 763-64; *Moore*, 605 S.W.2d at 926; *Cochran*, 78 S.W.3d at 28. Because the trial court did not abuse its discretion by revoking Drake's community supervision, we overrule Drake's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on December 2, 2013
Opinion Delivered January 8, 2014
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.