

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00379-CR

Terri Lynn **CRESPO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court No. CCL-12-0832
Honorable Frank Follis, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Marialyn Barnard, Justice
            Rebeca C. Martinez, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  March 5, 2014

AFFIRMED

Appellant, Terri Lynn Crespo, was charged by information with the offense of terroristic threat, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 22.07(a)(2) (West 2011).  After a jury found her guilty, the trial court assessed punishment at 180 days' confinement in the county jail, but suspended the sentence and placed her on community supervision for a period of 18 months.  In a single issue, Crespo challenges the sufficiency of the evidence to support her conviction. We affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The complainant, Rai Simonson, testified to the following facts. She and Crespo were neighbors, each occupying a mobile home separated only by a vacant lot. Before the alleged occurrence, Simonson stated she and Crespo were friendly and spent a lot of time together, but their friendship deteriorated after two significant arguments, the first occurring during a trip to Las Vegas. Simonson stated that, while on the trip, Crespo became angry and yelled at Simonson. They returned home and did not have contact for two to three months until Crespo apologized. Simonson stated she remained friendly but "guarded" with Crespo. A second argument later occurred over whether Crespo was supposed to look after Simonson's plants while she was away on vacation. Simonson testified Crespo called her "three or four times yelling at me over and over." After the phone calls, they stopped speaking to each other.

On the morning of March 31, 2012, Audrey Munzker and her three children arrived from North Carolina to visit Simonson. After unloading their car and while visiting on the porch, Simonson testified Crespo started speaking loud enough for her to hear, calling her curse words. Simonson indicated that a week before, she had reported Crespo to the police for playing music too loudly. Their neighborhood property manager subsequently placed a notice on everyone's door in the neighborhood reminding all to be courteous per community rules. According to Simonson, Crespo thereafter played her music even more loudly. While on her porch with Munzker, Simonson testified that she avoided eye contact with Crespo while Crespo paced back and forth inside the perimeter of her yard, "saying phrases like nobody tells me what to do" and "very creative combinations" of curse words, and calling Simonson other obscenities. Simonson and Munzker went inside, but later returned to the porch to smoke a cigarette and drink coffee. Crespo was not in her yard, but at some point came back outside and continued to rant and talk to herself. Simonson testified Crespo "has a very tall stature. Her body positioning was [an]

exaggerated demonstration of intimidating body postures." On direct examination, Simonson demonstrated how Crespo would stop pacing and place her hands on her hips "very demonstratively, put her foot out and go like this (indicating) and stand there and hold body positions like that." Simonson and her guest went back inside and returned outside a third time. Crespo also returned again, with similar "escalated" behavior. This time, Crespo called Simonson a pedophile, "telling me that she was going to burn me down, burn my house down, and run me out of the neighborhood."

Munzker testified to hearing the same threats, describing Crespo's demeanor as escalating throughout the day, with Crespo getting louder and more aggressive, and moving closer to Simonson's home. She further testified to hearing Crespo threaten Simonson by saying, "I'm going to get you," "I'm going to burn you down," and "I'm going to burn your house down." Afraid for the safety of her friend, Munzker told Simonson to call the police. On cross-examination, Munzker admitted that in her statement earlier to police she indicated Crespo made only one threat – to burn Simonson down, and did not mention burning the house down or running her out of the neighborhood.

Officers Rudy Jimenez and Chris Martinez also testified for the prosecution. Each testified they spoke to Crespo on different, separate occasions after the date of the incident; each described Crespo's behavior at that time as "escalating" and "belligerent; neither testified regarding the particular statements made by Crespo to Simonson or offered evidence particular to the issue of threatening imminent serious bodily injury.

### SUFFICIENCY OF THE EVIDENCE

#### *Standard of Review*

In reviewing the legal sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the

- 3 -

essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The essential elements of the crime are the elements of the offense as defined by a hypothetically correct jury charge, which is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012), *cert. denied*, 133 S.Ct. 536 (2012) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The law "as authorized by the indictment" consists of the statutory elements of the offense as modified by the charging instrument. *Johnson*, 364 S.W.3d at 294; *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. The jury may make reasonable inferences from the evidence presented. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (jury may draw reasonable inferences from the basic facts to the ultimate facts). This legal sufficiency standard applies equally to both direct and circumstantial evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

### *Analysis*

Penal Code section 22.07 defines the offense of terroristic threat. TEX. PENAL CODE ANN. § 22.07 (West 2011). The relevant portion of section 22.07 provides that a "person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to place any person in fear of imminent serious bodily injury." *Id.* § 22.07(a)(2). In this case, the information alleged that Crespo unlawfully threatened to "burn down Rai Simonson with intent to place Rai Simonson in fear of imminent serious bodily injury."

As we indicated previously in *Phillips v. State*, the offense of terroristic threat is completed under section 22.07(a)(2) once the defendant makes a threat to commit a violent offense seeking the desired reaction of placing the victim in fear of imminent serious bodily injury. *Phillips v. State*, 401 S.W.3d 282, 292 (Tex. App.—San Antonio 2013, pet. ref'd) (internal citations omitted). The focus of the intent inquiry is on the intended reaction. *Id.* It is not necessary that the victim actually be in fear of imminent serious bodily injury or that the defendant have the capability or intention to actually carry out the threat of violence. *Id.* at 293; *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982). Further, the State is not required to prove an admission by the defendant as to her own specific intent before she can be convicted of a terroristic threat; it may be inferred from the defendant's acts, words, or conduct. *Zorn v. State*, 222 S.W.3d 1, 3 (Tex. App.—Tyler 2002, pet. dism'd). "The desired and sought after reaction of the listener, regardless of whether the threat is carried out, constitutes some evidence of the intent of the protagonist." *Id.*

Crespo contends that for a threat to be "imminent," it must be "near at hand," or "at the point of happening." Citing to *Bryant v. State*, she argues that a threat to do some harmful act, not immediately but in the future, without more, is not a threat of imminent serious bodily injury. *See Bryant v. State*, 905 S.W.2d 457, 459-60 (Tex. App.—Waco 1995, pet. ref'd) (conditional threat to assault county commissioner if he did not grade road in front of defendant's house was insufficient to prove defendant's specific intent to place commissioner in fear of imminent serious bodily injury under section 22.07(a)(2)). Crespo argues the alleged threat could not be perceived as imminent, and the evidence failed to show the threat was a threat of imminent violence against Simonson. She contends nothing in her words or actions, or in the context in which her statements to Simonson were made, give rise to an inference that serious bodily injury was imminent. Crespo points to (1) the lack of physical proximity to enact the threat, (2) the lack of corresponding behavior to indicate an intent to carry out the threat immediately, and (3) the lack of any physical

contact with Simonson. Given the context within which the statements were made, Crespo submits no reasonable inference of imminent serious bodily injury could be made. We disagree.

Considering the words, body language, and tone of voice exhibited by Crespo on the date in question, as described above, we conclude that a rational jury could reasonably find Crespo's statements that she would "get her," and "burn" Simonson and her house down constituted a threat of serious physical injury against Simonson. We also conclude that a rational jury could reasonably conclude the threat was imminent. *See Walker v. State*, 327 S.W.3d 790, 795 (Tex. App.—Fort Worth 2010, no pet.) (evidence to support terroristic threat conviction held sufficient when defendant, while being escorted to a holding cell, stopped about five feet from Judge Nekhom, turned toward her, "bowed his chest out," stared at her, and said, "'Let's do it, Nekhom. It's me and you now.'"). It is immaterial whether Crespo had the ability or intent to carry out her threat of violence. *Phillips*, 401 S.W.3d at 293. Further, the proximity between the complainant and the defendant is not dispositive of whether the threat is imminent. *See George v. State*, 841 S.W.2d 544, 547 (Tex. App.—Houston [1st Dist.] 1992), *aff'd*, 890 S.W.2d 73 (Tex. Crim. App. 1994) (rejecting defendant's argument that because he was "miles away" when he made the threat to kill the complainant, he could not have intended to inflict imminent serious bodily injury).

Viewing all the evidence in the light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of the offense of terroristic threat beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. The evidence is thus legally sufficient to support the conviction. Appellant's sole issue is overruled, and the judgment is affirmed.

Rebeca C. Martinez, Justice

DO NOT PUBLISH