

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00386-CR

Deshawn Ondrey **WILLIAMS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 14, Bexar County, Texas
Trial Court No. 360545
Honorable Phil Chavarria Jr., Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Karen Angelini, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  April 16, 2014

AFFIRMED AS MODIFIED

Appellant Deshawn Ondrey Williams was found guilty of terroristic threats on a public servant.  On appeal, Williams contends the evidence is insufficient to support the jury's verdict because any alleged threat was for future harm and, therefore, could not have placed the complainant in fear of imminent serious bodily injury.  Williams also asserts the trial court erroneously assessed attorney's fees.  Based on the trial court's determination that Williams was indigent, we modify the judgment to remove the assessment of attorney's fees.  Because the jury

was permitted to infer the defendant's intent from his acts, words, and conduct, we affirm the trial court's judgment as modified.

## FACTUAL BACKGROUND

John Barfield alleges that on March 19, 2011, while he was standing in his driveway, Williams drove up to the front of the driveway and threatened him. Williams knew that Barfield was a Bexar County probation officer at the time. For many years, Williams lived with his mother in the house across the street from Barfield, and the two men knew each other as neighbors. Shortly after the incident, Barfield called the police and subsequently provided San Antonio Police Detective Bigham with a written statement.

During the trial, Barfield testified that Williams yelled obscenities and threatened him. Specifically, Barfield testified that Williams yelled,

> I want you in my courtroom next week. I promise you they will throw your f**king a** out of my courtroom. I want you in—I want you in my courtroom next week, and I promise you, they will throw your f**king a** out of the courtroom. I want you to have a nice suit on, and when you do, I promise you, once they throw you out of my courtroom, I will bury you in it.

According to Barfield, he told Williams that he was going to report Williams based on the threats, and Williams responded, "I don't give a f**k, you f**king a**hole."

Based on Williams's actions, Barfield testified he was in imminent fear of serious bodily injury such that, after being threatened, he went into his house and retrieved a gun. In response to Barfield's report, San Antonio Police Officer Thomas Jefferson was dispatched to Barfield's residence on the same day as the alleged incident. Officer Jefferson described Barfield as "very disturbed and upset." He testified Barfield was "very agitated, [and] very angry that he would have been threatened in this manner."

The jury convicted Williams of terroristic threats on a public servant. On appeal, Williams contends the evidence is insufficient to support his conviction.

**ARGUMENT OF THE PARTIES**

Williams contends the evidence is legally insufficient to prove the alleged threat was made with the specific intent to place Barfield in fear of imminent serious bodily injury or death. Williams's primary focus is on the lack of intent. Although Williams concedes the jury could reasonably infer the statement was intended as a threat against Barfield's life, he argues the proper focus is not on the threat itself, but instead the reaction the speaker intended to create in the listener. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Phillips v. State*, 401 S.W.3d 282, 292 (Tex. App.—San Antonio 2013, pet. ref'd). Thus, Williams contends the State had to prove Williams intended to place Barfield in fear of *imminent* serious bodily injury or death, but because the alleged threat concerned a future event, i.e., "in my courtroom next week," the evidence cannot support the imminent finding.

The State argues that Williams only focuses on the literal meaning of his threat and not all of the evidence before the jury. The State also contends there are no magic words required to satisfy the statute. Relying on *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. [Panel Op.] 1982), the State argues, "it is not necessary that the victim be placed in fear of imminent serious bodily injury; it is the defendant's threat of violence made with the intent to place the victim in fear of imminent serious bodily injury that constitutes the offense." *Id.*; *accord Phillips*, 401 S.W.3d at 292–93 (explaining the focus of the intent is on the intended reaction).

**TERRORISTIC THREATS**

Section 22.07 of the Texas Peal Code sets forth the elements of terroristic threats. TEX. PENAL CODE ANN. § 22.07 (West 2011). The relevant portion of the statute provides "(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to: . . . (2) place any person in fear of imminent serious bodily injury." *Id.*

§ 22.07(a)(2). If the offense is committed against a public servant, the punishment range is enhanced to a Class B misdemeanor. *Id*. § 22.07(b).

The information in this case alleged that Williams:

did threaten to commit an offense involving violence to John Barfield, . . . and defendant knew [Barfield] was a public servant, namely: a probation officer, to wit: defendant threatened serious bodily injury or death to John Barfield, with intent to place John Barfield in fear of imminent serious bodily injury.

A threat is defined as "'a declaration of intention or determination to inflict punishment, loss or pain on another, or to injure another by the commission of an unlawful act.'" *Cook v. State*, 940 S.W.2d 344, 347 (Tex. App.—Amarillo 1997, pet. ref'd) (quoting BLACK'S LAW DICTIONARY 1480 (6th ed. 1990)). Whether the defendant possessed "the capability or the intention to carry out his threat" is immaterial. *Dues*, 634 S.W.2d at 305; *accord In re C.S.*, 79 S.W.3d 619, 623 (Tex. App.—Texarkana 2002, no pet.).

## A.     Standard of Review

In reviewing a challenge to the sufficiency of the evidence, an appellate court examines all the evidence in the light most favorable to the verdict and determines whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We "defer to the jury's credibility and weight determinations because the [trier of fact] is the **sole** judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899; *accord Jackson*, 443 U.S. at 326; *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). We remain mindful, however, that this court may not sit as a thirteenth juror and substitute our judgment for that of the fact-finder. *Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). This standard accounts for the fact-finder's duty to "resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Our analysis considers "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

**B.      Imminent Serious Bodily Injury**

Williams denied the incident ever happened. He testified that he never left his house that day and told the jury that he was watching an entire season of a television show. Yet, assuming a threat was made, Williams contends no rational juror could have found that he had a specific intent to place Barfield in *imminent* fear of serious bodily injury. Our analysis, therefore, first addresses whether William's alleged threat to (1) "bury" Barfield (2) "next week" (3) if he showed up in court, was a conditional threat and thus failed to satisfy the necessary intent to place Barfield in fear of imminent serious bodily injury.

*1.      Threat Only Referenced a Future Event*

"[C]onditioning a threat of harm on the occurrence [or nonoccurrence] of a future event does not necessarily mean that the harmful consequences are not imminent." *Williams v. State*, 194 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 353 (Tex. Crim. App. 2008) (citing *In re A.C.*, 48 S.W.3d 899, 904 (Tex. App.—Fort Worth 2001, pet. denied)); *see also Cook*, 940 S.W.2d at 348. Once the defendant makes a threat to commit a violent offense seeking the "desired reaction to place a person in fear of imminent serious bodily injury," the offense of terroristic threat is completed. *Dues*, 634 S.W.2d at 306; *Walker v. State*, 327 S.W.3d 790, 794 (Tex. App.—Fort Worth 2010, no pet.). The requisite intent can be inferred from "the defendant's acts, words, or conduct." *Phillips*, 401 S.W.3d at 293. "[T]he crime is complete if the accused sought, as a desired reaction, to place a person in fear of imminent serious bodily injury." *Cook*, 940 S.W.2d at 349.

Imminent[1] means "'[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.'" *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (quoting BLACK'S LAW DICTIONARY 676 (5th ed. 1979)); *accord Mayberry v. State*, 351 S.W.3d 507, 510 (Tex. App.—San Antonio 2011, pet. ref'd). Williams directs this court to *Bryant v. State*, 905 S.W.2d 457 (Tex. App.—Waco 1995, pet. ref'd), for support that the alleged threats contained intimidations for future injury—next week—not imminent injury.

In *Bryant*, the defendant approached a local county commissioner on a roadside during a road repair operation. *Id.* at 457. Bryant was angry because an ambulance called after his mother suffered a heart attack was delayed for almost an hour due to the road's condition. *Id.* Bryant threatened the commissioner with physical violence if "[the commissioner] did not grade the road." *Id.* at 458. The court held the evidence was insufficient to support the conclusion that "[Bryant] intended [the commissioner] to believe that he would inflict the harmful consequences connected to [the commissioner's] non-performance of a future act—the grading of Bryant's road—at the scene of their confrontation." *Id.* at 460. The court continued "there is no evidence that he had the specific intent to place [the commissioner] in fear *at that time*. . . . [and] the harmful consequences threatened by Bryant were *connected to and conditioned on the non-occurrence of a future event*." *Id.* (emphasis added).

If our determination was limited to a review of only the words spoken by Williams, we would agree. The words themselves threaten a future harm. Yet, our analysis also must include all inferences available to the jury, including the circumstances surrounding Williams's acts, his alleged threats, and Williams's conduct surrounding the threat of violence. *See Dues*, 634 S.W.2d

---

[1] The jury charge does not include a definition of "imminent."

at 305; *see also Jackson v. State*, 913 S.W.2d 695, 700 (Tex. App.—Texarkana 1995, no pet.) (looking at whether "'the words *and conduct* of the accused were sufficient to place a reasonable person in the victim's circumstances in fear of imminent bodily injury or death'" (emphasis added)) (quoting *Walder v. State*, 880 S.W.2d 225, 226 (Tex. App.—Austin 1994, no pet)).

### 2. *Williams's Other Acts and Conduct*

Barfield testified that he "didn't really focus on the 'next week.'" Instead, he was focused on Williams's threats that he was going to "bury" him. "All I thought about, I was going to be buried—I was going to get hurt soon." We consider all the evidence before the jury to determine the reasonable inferences stemming from Williams's acts and conduct. *Phillips*, 401 S.W.3d at 293.

#### a. Williams and Barfield Were Not Strangers

Both Williams and Barfield testified they lived across the street from each other and had known each other for at least fifteen years. Barfield confirmed that, over the years, he had several interactions with Williams. He testified that Williams "never said nothing like that before, and, also, because I [knew] the type of person he [was]." Barfield continued, "People know when other people mean what they say. And, I know he meant what he said."

#### b. Williams's Nonverbal Actions

Barfield also testified to Williams's nonverbal actions. Accordingly to Barfield, Williams drove up to Barfield's driveway, within fifteen feet of Barfield, yelled vulgarities, and threatened him. Yet, after speeding away, Williams turned his vehicle around and drove back toward Barfield. "[H]e drove real fast down the street, and he almost turned his car over, when he made the turn. Immediately, he came back, so I wanted to make sure, if he [came] back, this time I was going to be ready, because I didn't—I knew he meant that." *See Poteet v. State*, 957 S.W.2d 165, 166–67 (Tex. App.—Fort Worth 1997, no pet.) (holding appellant's presence in victim's driveway,

- 7 -

yelling and screaming, appearing angry and steadily moved toward victim, victim believed appellant wanted to harm him and cause injury and that he was "afraid for his life").

The jury also heard testimony that Williams's physical dominance was an issue. At the time of the incident, Barfield was sixty-one years old, about five-foot, five-inches tall, and approximately 143 pounds. Comparatively, Barfield described Williams as twenty-three years old and significantly bigger and taller. *See Pitte v. State*, 102 S.W.3d 786, 792 (Tex. App.—Texarkana 2003, no pet.) (looking at the "present capability of the accused to carry out the threat"); *Hadnot v. State*, 884 S.W.2d 922, 924 (Tex. App.—Beaumont 1994, no pet.) (looking at fact that complainant was not a "physical match" for the appellant who was drunk). Although the record does not include photographs comparing the two individuals, the jury was free to utilize their personal observations of the disparities in size between Barfield and Williams. *See Anderson v. State*, No. 05-09-00737-CR, 2001 WL 989052, at *4 (Tex. App.—Dallas Mar. 22, 2011, no pet.) (mem. op., not designated for publication) (citing *Kelley v. State*, 187 S.W.3d 761, 763 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (concluding the jury was able to compare the size and strength of the defendant with the victim).

### c.     Barfield's Actions

Because our analysis considers "the desired and sought after reaction of the listener (or of the complainant) regardless of whether the threat is real or whether the threat is carried out, [as constituting] some evidence of the intent of the protagonist," Barfield's actions are also relevant. *Hadnot*, 884 S.W.2d at 925–26. Williams's attorney spent a significant amount of time questioning Barfield about his actions following the alleged threats. Specifically, Williams contends that Barfield's returning to the driveway to finish washing his wife's car, *before calling the police*, and the several week delay before making an official statement were evidence that Barfield was not in fear of imminent injury.

Barfield, however, was adamant that he "fear[ed] for his life. I went inside and got my gun, because I felt he would return." *See Boston v. State*, No. 05-96-00832-CR, 1998 WL 19938, at \*4 (Tex. App.—Dallas Jan. 22, 1998, no pet.) (not designated for publication) (looking at fact that appellant's behavior caused the officer to draw his weapon). When questioned, Barfield testified that immediately following Williams's threats, he went inside the house to retrieve his gun for protection. Although Barfield acknowledged returning to his vehicle before calling the police, Barfield clarified that he went outside and cleaned up for three or four minutes. He further explained that his wife, children, and grandchild were in the house when Williams made the threats and he was making sure that Williams did not come back. *See George v. State*, 841 S.W.2d 544, 546–47 (Tex. App.—Houston [1st Dist.] 1992), *aff'd*, 890 S.W.2d 73 (Tex. Crim. App. 1994) (holding that threats made over the phone to kill his ex-wife, when she did not press charges until after consulting with her divorce attorney, were imminent because she knew him and his actions were consistent with an intent to create "a fear of imminent serious bodily injury").

*3.     Analysis*

The jury could have reasonably determined that Williams's yelling and threat of violence, accompanied with the nature of his actions, was delivered in such a manner that Williams was trying to scare Barfield and make Barfield believe that Williams was going to physically harm him. *In re A.C.*, 48 S.W.3d 899, 904 (Tex. App.—Fort Worth 2001, pet. denied) (holding that defendant's words and actions that he "wanted the girls to immediately fear him due to the imminent possibility that he would [harm the girls]" is some evidence of defendant's intent).

**C.     Sufficient Evidence**

Regardless of the date on which Williams planned "to see" Barfield, the jury could have reasonably concluded that Williams was threatening to "bury" Barfield, a threat Barfield interpreted as a threat on his life. Although the words taken alone constitute a future threat, the

jury is permitted "to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Here, the threats were made by a person with whom Barfield was long acquainted. Williams was significantly bigger and, presumably, stronger than Barfield. The evidence supports Williams approached Barfield in a threatening manner and, even after leaving the scene, Williams circled back around to Barfield's residence. "[T]he jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899; *accord Jackson*, 443 U.S. at 326; *Brown*, 270 S.W.3d at 568. Williams's actions, in light of his words and conduct, could be reasonably viewed as "'threatening; menacing; [and] perilous.'" *Cook*, 940 S.W.2d at 347 (quoting *Devine*, 786 S.W.2d at 270). Accordingly, we conclude there is sufficient evidence to support the jury's verdict regarding whether Barfield was placed in fear of imminent serious bodily injury. We overrule Williams's sufficiency issue.

## ATTORNEY'S FEES

The State concedes the record does not support that Williams's financial circumstances materially changed after the trial court determined he was indigent and, therefore, agrees the judgment should be modified to remove the attorney's fees. Accordingly, we modify the judgment and bill of costs to delete the assessment of attorney's fees. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2013); *accord Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); *Fulmer v. State*, 401 S.W.3d 305, 318 (Tex. App.—San Antonio, pet. ref'd), *cert. denied*, 134 S. Ct. 436 (2013).

## CONCLUSION

Having reviewed the evidence in the light most favorable to the judgment, we conclude the evidence is sufficient to support each element of the offense.  We affirm the trial court's judgment as modified.

Patricia O. Alvarez, Justice

PUBLISH