

# NUMBER 13-19-00279-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**PAMELA ANNETTE NEWTON,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                       **Appellee.**

---

## On appeal from the County Court at Law No. 4
## of Bexar County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Tijerina**
**Memorandum Opinion by Justice Tijerina**

Appellant Pamela Annette Newton appeals her terroristic threat conviction, a class

B misdemeanor. *See* TEX. PENAL CODE ANN. § 22.07(a)(2), (c).[1] Newton received a

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this case was transferred to this Court from the Fourth Court of Appeals in San Antonio. *See* TEX. GOV'T CODE ANN. § 73.001.

sentence of six months' confinement probated for a term of fourteen months. By two issues, Newton contends that the evidence is insufficient to support the judgment and the charging instrument provided constitutionally defective notice.[2] We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

By her first issue, Newton contends that the evidence is insufficient to support the conviction. Specifically, Newton complains that a video admitted into evidence is inconsistent with the complainant's testimony, namely that the car Newton drove was green and that Newton turned her vehicle right onto Semlinger Road.

### A. Standard of Review and Applicable Law

In determining the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Chambers v. State*, 580 S.W.3d 149, 156 (Tex. Crim. App. 2019); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not

---

[2] We have reorganized and renumbered Newton's issues for purposes of our analysis.

unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240.

As charged in this case, a person commits the offense of terroristic threat if the person threatens to commit any offense involving violence to any person with the intent to place any person in fear of imminent serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.07(a)(2). A threat is a declaration of intention or determination to inflict punishment, loss, or pain on another, or to injure another, or to injure another by the commission of an unlawful act. *Williams v. State*, 432 S.W.3d 450, 453 (Tex. App.—San Antonio 2014, pet. ref'd). It is not required to prove that the actor possessed the capability or the intention to carry out the threat. *Id*. At the moment a person threatens to commit a violent offense which seeks to place a person in fear of imminent serious bodily injury, the offense of terroristic threat is completed. *Id*. at 454.

## B.     The Evidence

The complainant, Devitra Williams, testified that after leaving church, she noticed that a person driving a car she had seen parked across the street from the church was following her vehicle. Williams called a friend, Taja Jackson, and told her she was concerned that she was being followed. Williams decided to stop at a Whataburger. Williams stated that as she stopped in the parking lot, a car driven by Newton, whom she recognized as being her coworker's wife, stopped by her driver's side door. Both women rolled down their windows. Williams stated that Newton said she had a gun, would "fuck [her] up," and "kept threatening to kill" her. Williams recalled Newton said, "[W]hen you come for me and mine, I will fuck you up." According to Williams, Newton "said that

3

[Williams] was coming for her husband," and Williams responded, that she "didn't want him." Williams testified that, while reaching for a scarf and lifting it, Newton said she had a gun. Williams did not know what Newton had underneath the scarf.

Williams described Newton's car as being "like a greenish" Volkswagen. Williams explained that it was "very dark" outside. Detective Cynthia Hovanec, an officer with the San Antonio Police Department, testified that Newton's license plate registration shows that she had "a 2008 dark blue Volkswagen Passat . . . ." Detective Hovanec described the vehicle as "appearing" to be green in a surveillance video of the Whataburger parking lot. Detective Hovanec, explained without objection that "sometimes it doesn't matter if you have dark hair, you could have blond hair on the video, so I'm not sure, but that's what it looked like to me." Detective Hovanec said that although Newton's car appeared to be green on the video, "it may not have been green."[3]

On cross-examination, Detective Hovanec explained that "sometimes the color is wrong" on video and that she merely notes in her report the color she sees on the video. Detective Hovanec said, "I'm not sure that—what color that vehicle might actually be. Like I said, in videos I've had blond-haired women turn out to be brunette. I mean, it is just odd." On redirect examination of Detective Hovanec, the prosecutor asked, "So is that to say that one shade could appear a different shade and a car that is maybe dark green in person could be some other dark shade on video?" Detective Hovanec replied, "Yes, uh-huh."

Jackson testified that she was on the phone with Williams, and she heard the encounter between Williams and Newton. Jackson stated that Williams told her that

---

[3] The video is of poor quality, and the car appears to be a dark color.

4

Newton had been driving the car, and Jackson also recognized Newton's voice. Jackson recalled hearing Newton state that she had a gun and would kill Williams. Jackson described Newton's tone as aggressive.

## C.    Discussion

Although the evidence shows that Newton's car is described as dark blue on her vehicle registration, whether the car Newton drove was green or blue has no bearing on whether she committed the charged offense. Thus, the color of Newton's car is not an essential portion of Williams's testimony. Moreover, evidence was presented that it was "very dark" when Williams saw the color of Newton's car and evidence that the color of the car on the video is not necessarily a true depiction of its actual color. Therefore, the video does not provide *indisputable* visual evidence contradicting *essential* portions of Williams's testimony. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (explaining that under the narrowest of circumstances found in that case "the nature of the evidence presented in [a] videotape [did] not pivot 'on an evaluation of credibility and demeanor'" and that "the videotape present[ed] indisputable visual evidence contradicting essential portions of the officer's testimony that the defendant had given him consent to search his body").

Next, Newton complains that the video shows that she did not turn right onto Semlinger Road as Williams claimed. However, whether Newton turned right or left has no bearing on whether she committed the charged offense. Therefore, even if the jury disbelieved Williams that Newton turned left, it could have still believed that Newton made the threats as described by Williams and could have reasonably convicted her. After considering all the evidence in the light most favorable to the verdict, we conclude that a

5

rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence.[4] *See Chambers*, 580 S.W.3d at 156; *Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99. We overrule Newton's first issue.

## II. CHARGING INSTRUMENT

By her second issue, Newton contends that there is a material deficiency in the charging instrument in that "the manner and means in the information would allow the State to prove any manner and means, as it did at trial, thereby inviting the State to retry Ms. Newton under a different manner and means."[5]

> Newton did not file a motion to quash the information or object to it on any grounds.

> If a defendant does not object to a defect, error, or irregularity of form or substance in an indictment before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other post-conviction proceeding.

*Jenkins v. State*, __ S.W.3d. __, __, PD-0086-18, 2018 WL 6332219, at *6 (Tex. Crim. App. Dec. 5, 2018) ("'Texas law now requires the defendant to object to any error in the indictment before the day of trial and certainly before the jury is empaneled.'"). Therefore, she has not preserved this issue for our review. *See id*.

Nonetheless, an information that tracks the statutory language is usually enough, and the information need not plead the evidence relied upon unless a fact is essential for

---

[4] We note that Newton has not challenged a specific element of the charged offense.

[5] Newton does not specify what exactly the charging instrument should have stated. She does not explain what the "manner and means" she complains were omitted from the charging instrument were, and in a reply brief, she claims that the State in its brief has misconstrued her issue because she "never argued that the information was constitutionally insufficient because it did not include the 'threatening words' in the information." She then argues again that she is complaining that the information failed to notify her of the manner and means. Again, Newton fails to state what "manner and means" were missing.

6

notice to the accused. *George v. State*, 841 S.W.2d 544, 548 (Tex. App.—Houston [1st Dist.] 1992), *aff'd*, 890 S.W.2d 73 (Tex. Crim. App. 1994) (citing *Beck v. State*, 682 S.W.2d 550, 554 (Tex. Crim. App. 1985)).

Here, the information tracks the statute as follows:

> on or about the 10th Day of January, 2018, PAMELA ANNETTE NEWTON hereinafter referred to as defendant, did threaten to commit an offense involving violence to Devitra Williams, to wit: defendant threatened serious bodily injury or death to Devitra Williams, with intent to place Devitra Williams in fear of imminent serious bodily injury. . . .

The information contains all the elements of the offense that the State had to prove under § 22.07(a)(2). *See George*, 841 S.W.2d at 548 (finding similar information sufficient because it tracked the statutory language); *see also* TEX. PENAL CODE ANN. § 22.07(a)(2). Any additional information was not required. *See George*, 841 S.W.2d at 548. We overrule Newton's second issue.

## III. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of March, 2020.

7