# In the Iowa Supreme Court

No. 25–0442

Submitted January 20, 2026—Filed February 27, 2026

**State of Iowa,**

Appellee,

vs.

**Alicia Elaine Fredericksen,**

Appellant.

Appeal from the Iowa District Court for Guthrie County, Michael Jacobsen, judge.

The defendant appeals her conviction for a threat of terrorism. **Affirmed.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Jacob P. Heard (argued) of Iowa Defenders, PLLC, Clive, for appellant.

Brenna Bird, Attorney General, and Adam Kenworthy (argued), Assistant Attorney General, for appellee.

**Christensen, Chief Justice.**

How close is close enough? The clock was already running. With a child welfare hearing set to begin in six days, a mother stated she would torture the child protective worker assigned to her case and shoot both that worker and the judge. This appeal turns on whether such a threat—specific in its targets, explicit in its violence, and tethered to a fixed court date—is "imminent" and constitutes a threat of terrorism under Iowa Code section 708A.5 (2024). Under these circumstances, yes. It does.

After the Iowa Department of Health and Human Services (HHS) removed the defendant's children from her care, she made these threats to her adult son, who was the children's caretaker. He reported this information to HHS, which immediately contacted law enforcement. The officer who answered the call was aware that the defendant had a history of hostility toward HHS and carried a firearm on her person during previous interactions with them. After speaking with the defendant about the threats, the officer obtained an arrest warrant for the defendant and later executed a search warrant on her residence and recovered three boxes of ammunition but no firearms.

The defendant stipulated to a trial on the minutes of testimony, and a district court found her guilty of one count of threat of terrorism in violation of Iowa Code section 708A.5. We retained the defendant's appeal, which challenges the sufficiency of the evidence to support her conviction and requires us to examine whether the defendant's statements constituted terroristic threats that caused a reasonable expectation or fear of their imminent commission. Reviewing the record for the correction of errors at law, we affirm the defendant's conviction. *See State v. Schooley*, 13 N.W.3d 608, 614 (Iowa 2024) (explaining our standard of review in sufficiency-of-evidence cases).

**I. Background Facts and Proceedings.**

In August 2024, Alicia Fredericksen was engaged in an ongoing child welfare case involving her minor children after HHS removed them from her care over safety concerns. The children were placed in the care of Fredericksen's adult son, Brandon. On August 3, Brandon was retrieving some of his siblings' belongings from his mother's home when she started badmouthing the professionals involved in her juvenile court case.

Fredericksen told Brandon that she fantasized about torturing P.B., the HHS worker assigned to the case, by cutting off her fingers and beating her until she was physically incapacitated. Fredericksen also told Brandon that she was going to shoot and kill the judge assigned to the case, as well as the HHS worker, the next time they had court. Fredericksen's next juvenile court hearing was scheduled for August 9.

Concerned, Brandon messaged Keri Charles, a different HHS worker, that he had something important to tell her. It is unclear from the record when Brandon sent this message, but Charles followed up with Brandon through a phone call at 9:16 a.m. on August 7. Brandon informed Charles that his mother planned to bring a gun to the August 9 hearing so that she could shoot the judge and HHS worker.[1] He also told Charles about Fredericksen's desire to torture the HHS worker before killing her, but he did not go into detail about what that involved. Finally, Brandon notified Charles that his mother had expressed homicidal and suicidal thoughts, including comments about killing herself on the day of the August 9 hearing.

---

[1]Brandon reported that Fredericksen also planned to shoot one of her other sons, but that is not relevant to our analysis of her threat of terrorism conviction.

Charles found these threats credible, especially because the August 9 hearing was a contested hearing scheduled to occur in person. Consequently, she contacted the Guthrie County Sheriff's Office at approximately 9:43 a.m. to report what Brandon had told her. Charles spoke with Deputy Blake Michelsen, providing him with background on Fredericksen's legal situation and the threats she conveyed to Brandon. Deputy Michelsen was already aware that Fredericksen had a hostile relationship with HHS workers in the past and had carried a firearm on her person during previous interactions with HHS and law enforcement.

Around 11:09 a.m., Deputy Michelsen called Fredericksen, starting the conversation by telling her that the Iowa Department of Criminal Investigation received a recording of her threatening to shoot and kill a judge. Fredericksen claimed she could not remember to whom she made the threats and downplayed them as "nothing serious." Deputy Michelsen pressed further, and Fredericksen reiterated that she could not remember making threats. She then stated she made the threats "hypothetically" but had no intent to act on them, characterizing them as "an emotional outburst."

Fredericksen told Deputy Michelsen that she could not remember "saying something so specific and dark" concerning her threat about how to torture the HHS worker. Multiple times during the conversation, Fredericksen claimed not to remember making any threats. Again, she remarked that she might have "hypothetically" made threats, but she did not intend to act on them. When Deputy Michelsen asked Fredericksen for her definition of "hypothetical," Fredericksen responded that it was "venting." She eventually admitted to making the threats "due to all the complications and stress and everything," but only

because she was emotional about her case. She informed Deputy Michelsen she no longer had access to a firearm.

That same day, Deputy Michelsen filed a complaint and affidavit against Fredericksen for making a threat of terrorism, the district court issued an arrest warrant, and Deputy Michelsen arrested Fredericksen. On August 13, Deputy Michelsen executed a search warrant at Fredericksen's home searching for firearms. He located three boxes of ammunition in a safe in Fredericksen's bedroom, but he did not find any firearms. Deputy Michelsen assumed the boxes of ammunition belonged to a firearm seized from Fredericksen by the Guthrie County Sheriff's Office before this case began.

The State charged Fredericksen with one count of threat of terrorism in violation of Iowa Code sections 708A.5 and 708A.1, a class "D" felony. Fredericksen waived her right to a jury trial and stipulated to a trial on the minutes of testimony. The district court found Fredericksen guilty, and we retained her timely appeal.

**II. Analysis.**

Fredericksen challenges the sufficiency of the evidence to support her conviction, which we review for the correction of errors at law. *See Schooley*, 13 N.W.3d at 614. We are bound by the district court's findings of fact if they are supported by substantial evidence. *State v. Hawkins*, 27 N.W.3d 562, 567–68 (Iowa 2025). In doing so, we examine the "evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Schooley*, 13 N.W.3d at 614 (quoting *State v. Mathis*, 971 N.W.2d 514, 517 (Iowa 2022)). Evidence is substantial if it "would convince a rational factfinder the defendant is guilty beyond a reasonable doubt." *Hawkins*, 27 N.W.3d at 568. To the extent

Fredericksen's challenge involves statutory interpretation, we review that for the correction of errors at law. *See State v. McCollaugh*, 5 N.W.3d 620, 623 (Iowa 2024).

To convict Fredericksen of a threat of terrorism under Iowa Code section 708A.5, the State had to prove Fredericksen was "[a] person who threatens to commit terrorism or threatens to cause terrorism to be committed and who causes a reasonable expectation or fear of the imminent commission of such an act of terrorism." Fredericksen maintains the State failed to do that in three ways. First, she contests the sufficiency of the evidence that her actions "cause[d] a reasonable expectation or fear." Second, she contends the evidence was insufficient to prove her threats were "imminent." Finally, she argues the evidence was insufficient to conclude her threats were terroristic.

**A. A Rational Factfinder Could Conclude Fredericksen's Threats Caused a Reasonable Expectation or Fear.** Fredericksen challenges the evidence that her statements "cause[d] a reasonable expectation or fear" under Iowa Code section 708A.5 because they were mere fantasies instead of threats. Notably, Fredericksen conceded at oral argument that her statements were "threats," but she maintained no reasonable person could expect she would act on them.[2] We disagree.

Although Chapter 708A does not define "threat" or "reasonable expectation or fear," our holding in *State v. Milner*, 571 N.W.2d 7, 10 (Iowa 1997), in which we interpreted a similar statute criminalizing threats to place an explosive device in any place where it would endanger people or property, is applicable. *See also State v. Jackson*, 305 N.W.2d 420, 422 (Iowa 1981) (defining "threat" in a

---

[2]Fredericksen does not claim her statements are protected under the First Amendment of the United States Constitution.

previous version of Iowa's terrorism statute as the expression of an intent to injure or inflict evil or damage on another), *overruled on other grounds by, State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010). There, we used the common meaning of the words, explaining that they are a promise or expression of intent to inflict distress, evil, injury, or damage on another. *Milner*, 571 N.W.2d at 10. We also noted "[t]he prohibited statements must be understandable as a threat by a reasonable person of ordinary intelligence" under the circumstances. *Id.*

Applying this definition, we held that there was sufficient evidence to support the defendant's conviction of a threat to use an explosive device for the following statements over a five-day period:

1. Just remember what happened in Oklahoma City.

2. I'll use the last of my gas money to come down and blow the [Department of Employment Services] up.

3. I'll drive in my truck and come blow you away.

4. I'm not going to be responsible for my behavior if you continue to aggravate me.

5. Someone might get hurt.

6. It is not going to be pretty if I have to come down there.

*Id.* at 10–11 (footnote omitted). We concluded that the defendant's "reference to the Oklahoma City incident, where a truck was rigged as a bomb, clearly made his later comments about driving his truck to the DES office and blowing the place up understandable as a threat to use an explosive device." *Id.* at 11. Other context supporting this conclusion included the defendant's "agitated demeanor," "threatening tone of voice," and "dissatisfaction and anger over the denial of his claim for unemployment benefits." *Id.*

Fredericksen's conduct warrants the same conclusion. She made explicit statements to Brandon about her plans to torture the HHS worker before

shooting and killing the worker as well as the judge at the upcoming hearing. As Fredericksen's son, Brandon had knowledge of his mother's temperament and understood her statements as true threats. *Cf. Katsenelenbogen v. Katsenelenbogen*, 775 A.2d 1249, 1259–60 (Md. 2001) (holding that the court must view the reasonableness of an asserted fear from the perspective of the victim and consider the victim's experience with the person making the threat); *State v. Stetzer*, 22 N.W.3d 893, 903 (Wis. 2025) ("[T]he defendant's personal history can be relevant to the reasonableness of her belief that her actions [of driving intoxicated to escape her abusive husband] were the only means of preventing imminent death [or] great bodily harm."). Fredericksen's son was concerned enough about the possibility of his mother carrying out the threats that he notified another social worker, Charles, involved in the case. Charles, too, believed that Fredericksen's threats were credible based on the contested nature of the upcoming hearing and immediately contacted law enforcement after learning of them.

Additionally, Deputy Michelsen reported "that he was aware that [Fredericksen] has been hostile to Iowa Department of Health and Human Services workers in the past and has carried a firearm on her person when interacting with Iowa Department of Health and Human Services and law enforcement." *See State v. Soboroff*, 798 N.W.2d 1, 9 (Iowa 2011) (finding sufficient evidence that the defendant's threat to contaminate the city's water supply was a true threat because the city's public works manager "flushed out the city's entire water supply, a process that took five to six hours," after learning of the threat, demonstrating that this employee "took the threat seriously"). In summary, all three witnesses understood Fredericksen's threats as expressions of her intent to harm the professionals involved in her juvenile court

case. Accordingly, we reject Fredericksen's challenge to her conviction on this ground because there was substantial evidence that her threats caused a reasonable expectation or fear.

**B. There Was Sufficient Evidence to Conclude Fredericksen's Threats Were Imminent.** Fredericksen also challenges the sufficiency of the evidence that she would imminently act on her threats because she made them six days before the hearing in which she warned she would act on them. Plus, she notes, when Charles contacted Deputy Michelsen to report the threats, the hearing at issue was still two days away.

Chapter 708A does not define "imminent," but we had the opportunity to interpret its meaning in *State v. Lane*, 743 N.W.2d 178 (Iowa 2007), when a defendant challenged the evidence that his threats of terrorism were imminent. *Id.* at 181–82. There, an officer was arresting the defendant for violating a protective order when the defendant began making threats. *Id.* at 180–81. The defendant referenced a recent shooting at an Atlanta courthouse, declaring, "That Atlanta shooting is not going to be the only thing that's going to happen. I am going to come down, get a court schedule, and I'm going to take care of all you mother fuckers." *Id.* He repeated multiple times on his way to the jail and during booking that "[y]ou guys are all going to be sorry when I get a court schedule." *Id.* at 181.

Based on these threats, the defendant was convicted of a threat of terrorism and argued on appeal that the State failed to prove a reasonable expectation that his threats were imminent. *Id.* at 181–82. We relied on the definition of "imminent" that we applied in *State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006), which dealt with the term's use in Iowa's self-defense and defense-of-others statute. *Lane*, 743 N.W.2d at 182. Specifically, relying on the

dictionary definition, we defined "imminent" as " 'ready to take place,' 'near at hand,' 'hanging threateningly over one's head,' and 'menacingly near.' " *Id.* at 182 (quoting *Shanahan*, 712 N.W.2d at 142).

Additionally, we clarified, "[O]ur statute does not require a person to threaten the *immediate* commission of an act of terrorism. Nevertheless, it does require a reasonable expectation the act is impending or about to occur." *Id.* In doing so, we held that the defendant's threats did not satisfy these definitions because he made them while he was in custody and they "could not have been carried out until the next day at the earliest." *Id.* We reasoned "[i]f we held that was sufficient for a threat of terrorism, we would be left with the odd result of imminence meaning one thing for self defense and another thing for terrorism." *Id.* Accordingly, Fredericksen argues her threats were not "imminent" because there were six days between the time in which she made them and the time in which she warned she would act on them.

We reiterate that *Lane* was correctly decided; the defendant was in custody, so the threatened act could not have been imminent in that case. *Id.* at 181–82. Yet we think *Lane* went too far in indicating that "imminent" needs to result in the same timeline when used in two very different criminal statutes. "Imminent" is a common adjective in the English language, and the context in which it is used matters. What is "imminent" enough to justify the use of force in self-defense can refer to a different, narrower timeframe than what is "imminent" enough to warrant prosecution for threatening terrorism.

Thus, our definition of "imminent" in *Lane* as " 'ready to take place,' 'near at hand,' 'hanging threateningly over one's head,' and 'menacingly near' " still stands and requires a fact-specific application. *Lane*, 743 N.W.2d at 182 (quoting *Shanahan*, 712 N.W.2d at 142). After all, we applied the dictionary

definition of the term. *Id.* Moreover, nothing in this definition or the threat-of-terrorism statute's use of the term suggests that it "was intended to place a limited timeline on when a specific and unconditional threat would be executed." *People v. Wilson*, 112 Cal. Rptr. 3d 542, 564 (Ct. App. 2010) (affirming a defendant's conviction for making criminal threats based on his statements to the correctional officer that he could find anyone and "blast" them, that he had killed officers and would do it again, and that he would find and "blast" the correctional officer when he was released on parole in ten months).

A factual inquiry into Fredericksen's threats supports the district court's conclusion that, under the totality of the circumstances, Fredericksen's threats created a "reasonable expectation or fear of the[ir] imminent commission." Iowa Code § 708A.5; *see also Milner*, 571 N.W.2d at 10–11 (affirming the defendant's conviction for the threat of arson and considering the totality of the circumstances, including the defendant's words, demeanor, tone of voice, and history with the office that he threatened); *Williams v. State*, 432 S.W.3d 450, 454 (Tex. App. 2014) ("[O]ur analysis [of whether the defendant's terroristic threats created fear of imminent harm] must include all inferences available to the jury, including the circumstances surrounding Williams's acts, his alleged threats, and Williams's conduct surrounding the threat of violence."); *cf. May v. Woods*, 430 P.3d 193, 196 (Or. Ct. App. 2018) ("[T]he court may look to the totality of the circumstances to determine that a respondent has, with the requisite mental state, placed a petitioner in fear of imminent serious bodily injury and in immediate danger of further abuse.").

Fredericksen's threats involved a specific date on which she indicated she would act on them, and that date was the scheduled August 9 hearing when she would be in the same room as the targets of her threats. *See United States v.*

*Auster,* No. 06–186 MAG., 2006 WL 8449820, at *4 (E.D. La. Nov. 16, 2006) ("Auster's most recent threat [made on September 13, 2006,] also was given with a date certain for the violence to begin, October 2, 2006, indicating a more imminent threat . . . . [I]t is reasonable to conclude that a criminal threat necessary for the charge of extortion occurred . . . ." (footnote omitted)); *Roach v. Mims,* No. 981, Sep. Term, 2021, 2022 WL 2865999, at *4 (Md. Ct. Spec. App. July 21, 2022) ("A threat that occurred days and months earlier and without immediate confrontation can support a claim that one feared 'imminent' harm."). Fredericksen also had a history of hostility in her interactions with HHS workers and had carried a firearm on her person when interacting with both HHS and law enforcement.

Believing that Fredericksen's threats were imminent, Charles immediately contacted law enforcement upon hearing them from Brandon. Likewise, Deputy Michelsen filed a complaint and affidavit immediately upon learning of the threats and arrested Fredericksen that same day. The response of all three witnesses demonstrated their reasonable expectation that Fredericksen's threats were "near at hand" or "hanging threateningly over [their] head[s]." *Lane,* 743 N.W.2d at 182 (quoting *Shanahan,* 712 N.W.2d at 142); *see also Katsenelenbogen,* 775 A.2d at 1259 ("[A] belief as to imminent danger 'is . . . often shaded by knowledge or perceptions of ancillary or antecedent events.'" (quoting *State v. Marr,* 765 A.2d 645, 652 (Md. 2001))).

Other courts have reached similar conclusions. For example, in New York, a district court upheld the indictment of a defendant under a comparable terrorism statute based on the defendant's threat that the district attorney's wife and children "are going to be killed by the end of the year," *People v. VanPatten,*

792 N.Y.S.2d 859, 862 (Madison Cnty. Ct. 2005), and an appellate court later affirmed, *People v. VanPatten*, 850 N.Y.S.2d 213, 216 (N.Y. App. Div. 2007).

In Texas, the Court of Appeals affirmed a defendant's conviction for terroristic threats on a public servant after the defendant approached a probation officer in his driveway to yell the following threats:

> I want you in my courtroom next week. I promise you they will throw your f**king a** out of my courtroom. I want you in—I want you in my courtroom next week, and I promise you, they will throw your f**king a** out of the courtroom. I want you to have a nice suit on, and when you do, I promise you, once they throw you out of my courtroom, I will bury you in it.

*Williams*, 432 S.W.3d at 452. The defendant argued the evidence was insufficient to prove his words and conduct placed the victim in fear of imminent harm. *Id.* at 454. The court used many of the same terms to define "imminent" as we did in *Lane* to conclude the defendant's "actions, in light of his words and conduct, could be reasonably viewed as 'threatening; menacing; [and] perilous.' " *Id.* at 456 (alteration in original) (quoting *Cook v. State*, 940 S.W.2d 344, 347 (Tex. App. 1997)).

Likewise, a New York appellate court affirmed a defendant's conviction for making a terroristic threat against the social services caseworker assigned to his girlfriend's case because the threat "caused reasonable fear of the imminent commission of such a murder." *People v. Jenner*, 835 N.Y.S.2d 501, 504 (App. Div. 2007). That defendant told the caseworker, "I'll solve this problem. I'll walk right into Madison County DSS. I'll get a gun. And I'll take care of that f***ing b**** . . . once and for all, and I'm not kidding. I've got nothing . . . you think Columbine was something, I've got nothing to lose." *Id.* at 503.

And like Fredericksen's history of hostility toward HHS and law enforcement, which included carrying a firearm in her interactions with them,

the defendant in the New York case had previously discussed gun models and proclaimed that he could "get [his] hands on any kind of gun" as a member of a militant Native American Society. *Id.* The appellate court concluded these circumstances sufficiently established the witnesses had a "reasonable fear of the imminent commission of such a murder." *Id.* at 504. Just as the defendants in these cases placed others in reasonable fear of imminent harm, Fredericksen's threats, combined with her history and the approaching court date, placed others in similar fear and provided the district court with sufficient evidence of their imminence to support her conviction.

**C. A Rational Factfinder Could Conclude Fredericksen Threatened to Commit an Act of Terrorism.** Fredericksen maintains her threats did not constitute "terrorism" under chapter 708A. Iowa Code section 708A.1(3) defines "terrorism" in relevant part as

> [A]n act intended to intimidate or coerce a civilian population, or to influence the policy of a unit of government by intimidation or coercion, or to affect the conduct of a unit of government, by shooting, throwing, launching, discharging, or otherwise using a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person, or within an assembly of people.

Condensed, that means Fredericksen had to threaten to commit or cause one of the following: (1) an act "intended to intimidate or coerce a civilian population"; (2) an act intended "to influence the policy of a unit of government by intimidation or coercion"; or (3) an act intended "to affect the conduct of a unit of government." *Id.*; *see also* Iowa Code § 708A.5. She contends her threats did not rise to this level because she made them to her son and had not "intended on her statements being relayed to [H]HS or to the judge in her children's juvenile court case" to influence their conduct in her case.

Nothing in chapter 708A requires an intent on Fredericksen's part that her threats be communicated to her desired victims. *See Jackson*, 305 N.W.2d at 423 ("There is no express requirement the fear, anger, or reasonable expectation must be experienced by the intended target of the threatened wrongdoing."). As we noted in interpreting a previous version of the statute, "If the requirement defendant urges us to adopt, that the threat be conveyed directly to the intended target, was read into this statute, many acts of terrorism would escape its bounds." *Id.* "[T]he emphasis is on the actor's intent, not on the victim's expectations." *Id.* Other state courts have reached this conclusion in interpreting their state terroristic threat statutes.[3]

Moreover, nothing in the statute requires the State to prove Fredericksen had the actual intent to carry out the threat. Her argument that it does conflates the intent required to convict her of *committing* an act of terrorism with the intent required to convict her of *threatening to commit* an act of terrorism. "[I]t is the threatening nature of the communication that makes it worthy of criminal sanction, which does not and should not require the same *mens rea* as a

---

[3]*See, e.g.*, *State v. Alston*, 865 P.2d 157, 169 (Haw. 1994) (affirming the defendant's conviction for terroristic threatening even though he communicated his threats to third parties instead of the target of the threat); *State v. Cope*, 44 P.3d 1224, 1227 (Kan. 2002) ("[Kansas's statute] does not require, as an element of the offense, that the defendant know his or her threat would be communicated to those being terrorized."); *State v. Smith*, 678 N.W.2d 733, 737 (Neb. 2004) (explaining that Nebraska's crime of terroristic threats focuses on the actor's intent to terrorize another instead of whether the victim was placed in fear from the threats); *Jenner*, 39 A.D.3d at 1086 (noting that it is not a defense to New York's terroristic threat statute that the defendant made the threat to someone other than the target of the threat); *Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. 2003) ("Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." (quoting *In re J.H.*, 797 A.2d 260, 262 (Pa. Super. Ct. 2002))); *cf. State v. Johnson*, 178 P.3d 915, 920 (Utah Ct. App. 2008) ("Utah's statute [criminalizing threatening a judge] does not require the recipient to actually feel threatened to be subject to criminal liability under the statute, as long as the defendant had the intent to impede or interfere or to retaliate.").

completed substantive offense." *People v. Byczek*, 976 N.W.2d 7, 18 (Mich. Ct. App. 2021).[4]

The threatened conduct still had to meet the definition of terrorism, which as relevant here, means: "an act intended . . . to affect the conduct of a unit of government, by shooting . . . a dangerous weapon at, into, or in a building, . . . occupied by another person, or within an assembly of people." *Id.* § 708A.1(3). Here, Fredericksen threatened to torture and kill the HHS worker assigned to her case and shoot the judge at the upcoming hearing regarding custody of her children. These threats created a reasonable expectation or fear in all three witnesses who learned of them that she would engage in that conduct, and law enforcement acted accordingly to protect the HHS worker and the judge from Fredericksen's threatened violence. Because Fredericksen's threats suggest that the objective of her threatened acts would be to exact vengeance or retaliation on two individuals who could steer the outcome of the upcoming juvenile court hearing, it was not unreasonable for the district court to conclude Fredericksen threatened to commit an act of terrorism that would "affect the conduct of a unit of government," i.e., the court proceeding in her juvenile court case. *Id.*

### III. Conclusion.

For these reasons, we affirm Fredericksen's conviction.

**Affirmed.**

---

[4]In *Counterman v. Colorado*, 600 U.S. 66, 79–82 (2023), the United States Supreme Court held that a threatening statement may not constitutionally be prosecuted under the First Amendment unless the person making the threat did so with the intent to make a true threat or at least under a state of mind of recklessness. As already noted, Fredericksen has not raised a constitutional challenge.